Madam Clerk, would you call the first case, please? 16-0-3454 v. Antwine Joiner The counsels, please approach them. Would you state your names for the record and the party that you are representing? Michael Orenstein, State Appellate Defender for Defendant Appellant Antwine Joiner Assistant State's Attorney, Phyllis Warren, on behalf of the people of the state of Illinois. Good morning, Your Honors. I'm filing an argument with Graham that I will show unless this Court has other plans. Your Honors, my client was convicted of murder and two attempt murders. For the murder, he received a minimum 45-year term. For the attempts, he received the minimum 26-year terms, with one of those running consecutive to the murder. For a total of 71-year term, which is about 67 actual years, that brings in good times. So my client, age 16, cannot be released until at least age 83. Isn't he also entitled to probation? The parole will be after. That's his release date before his MSI. Assuming he didn't lose any good time in prison, he would be released at age 83 and he would be out of MSI at age 86, I believe. So in sentencing my client, the judge never mentioned his youth or his rehabilitation potential, and logically so, as his hands were tied by the minimum sentences. Under the Eighth Amendment, my client's sentence is unconstitutional as applied, just like last Friday's case in the Third District, People v. Smalley, where the defendant had a release age of age 83 years younger than my client. To show why, I'll address what People v. Reyes did and what it did not do. People v. Reyes did three things important to this case. It recognized the concept of de facto life terms. It also recognized that aggregate consecutive sentences can be de facto life, and it extensively quoted the Wyoming High Court's decision in Bear Cloud. These findings are important. Our claim is also de facto life. My client also received consecutive sentences totaling 71 years. And Reyes quoting Bear Cloud echoes Bear Cloud's definition of de facto life, the functional equivalent of natural life. Bear Cloud found this functional equivalent at a release age of 61. My client's release age is 83. As in Bear Cloud, my client's sentence creates what Miller calls a denial of hope. Now the state says that Reyes defined de facto life differently. They say it is unsurvivable. But the important thing to remember about Reyes is it was a concession case. The state conceded de facto life. It conceded because a Reyes term was unsurvivable. Reyes therefore had no need to address lower terms. And again, it invoked Bear Cloud with its release age of 61. The state also urges this court to avoid the actual or weeds, quote unquote, meaning no life expectancy. But there are four problems with that. First, the state standard returns this court to the weeds. That is unsurvivable. 80, 85, 90, 92. Justice John Paul Stevens is alive at 97. Jimmy Carter is 93. Even the Reyes release age, 105, is not literally unsurvivable, as some humans have survived it. Second, the state ignores the way of authority. The state concedes that this court has found de facto life when the release age is younger than 83. But it can find no case denying relief with a release age exceeding it. And, in fact, the oldest release age case in this state favoring the state, people we owe, the release age is 68, 15 years younger than my clients. Third, the state ignores why Graham and Miller exist. Graham talks about opportunity for reentry into society. Miller talks about meaningful opportunity for rehabilitation. And Montgomery talks about hopefully years of life outside prison walls. And, finally, the weeds are important. Graham and Miller talk about denial of hope. And hope has to stand on reality, and an 83-year release date is not reality. So since Reyes did not define de facto life, how should this court construe it? There are at least three approaches. It could adopt the life expectancy tables of the Social Security Administration. An average 16-year-old, not taking into account race or prison or anything else, can expect to live to about age 78. It could adopt the much-cited findings of the United States Sentencing Commission. They place a 25-year-old's life expectancy, going into age 25, will average at age 64, and juveniles in those will probably live less long. Or it could adopt the holdings of Iowa State Feed Now and Wyoming's Bear Cloud, talking about a preceding geriatric release. So unless there are questions, in closing, I would note that this is just the kind of case that Graham and Miller envision. It's a first arrest, an impulsive crime, possibly involving retaliation, as my client himself had been shot. And, of course, it involves a homicide, which is a very serious situation. So, too, did Graham, Miller, and Montgomery involve homicides. And as far as the remedy, the state correctly defines it in its brief. This court should remand for resentencing under the new sentencing statutes, under which the minimum would be 20 years for murder and six years for attempt murder. I have a question in regards to the post-conviction petition that was filed at the trial court. Yes. The trial court looked at this, and the court just basically and summarily discharged it, and said it was frivolous and without merit. That's true. Can you address that? This court's review is de novo, and this court has no obligation to defer or alter the trial court because it's a first-stage PC. As far as your questions, I'd ask this court to reverse the sentence and remand for resentencing. Thank you. Good morning, Your Honors. Assistant State's Attorney Phyllis Warren on behalf of the people of the state of Illinois in this matter. Your Honor, it's the state's position that the defendant's 71-year- Speak up a little louder, okay? There you go. Thank you, Your Honor. It's the state's position that the defendant's 71-year sentence, which provides for a scheduled release date at the age of 83, does not constitute a de facto life sentence. While no United States Supreme Court case or Illinois Supreme Court case has given us a bright-line rule about how long a sentence must be in order to qualify as a de facto life sentence, the Illinois Supreme Court in Reyes has given us clear insight. In Paragraph 8 of the Reyes decision, the Illinois Supreme Court agreed that no rationale applies to mandatory term of years, quote, that indisputably amounts to life imprisonment without the possibility of parole. In Paragraph 9, the Reyes quote stated that a mandatory term of years sentence that cannot be served in one lifetime has the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole. In either situation, the juvenile would die in prison. In that same paragraph, Paragraph 9, the Reyes quote held that sentencing a juvenile offender to a mandatory term of life, I'm sorry, a mandatory term of prison, is, quote, the functional equivalent of life without the possibility of parole. And the reason I say, if we could go to the Miller. Yes. The Supreme Court in Miller indicated there are certain factors that the trial court has to consider in rendering a sentence. And it appears that when you look at the record, it appears to be a question whether or not the trial court here actually did look at some of the mitigating factors. Can you address that? Your Honor, the record that is before this court indicates that the court sentenced the defendant based on the mandatory sentence guidelines. It did say it did consider the PSI and it did consider aggravating and mitigating factors. Assuming that the defendant, the court was well aware of the defendant's age at 16, but it appears that the trial court sentenced the defendant based upon the mandatory guidelines for murder, minimum guidelines for the murder, and the attempt murder. So it's your position here that the trial court did look at mitigating factors with regards to the age and ability to be rehabilitated, et cetera? Based on the PSI, based on the information that it had in front of the court, Your Honor, the PSI, which indicated the defendant's age and his background. Your Honor, the languages in Reyes comports with the language in Montgomery v. Louisiana, in which the United States Supreme Court stated that minors must be given the opportunity to show their crime did not reflect irreparable corruption. And if it did not, their hope for some years of life outside prison walls must be restored, end quote. Here, the defendant's sentence, which provides for a release at the age of 83, is not a de facto life sentence, because it does provide for some years outside of the prison walls. It is not the functional. I'm sorry. Can I just stop you? A child goes into the prison at 16 and has to serve 66 years. They will not get out before they're 82 or 83. How do they have any hope to live that long and have any kind of meaningful life if they're released at 82 or 83 years of age? I mean, that doesn't sound like an opportunity for hope for anything to me, an opportunity for reentry, an opportunity for rehabilitation. How does a 16-year-old who doesn't get out to 83 not have what is a de facto life sentence? Yeah, respectfully, it's the state's position that on their way out, a de facto life sentence is a sentence that cannot be served within one lifetime. Now, isn't there some, I can't remember what the study was, that said juveniles in jail live to be about 61? Isn't there a study that said that in one of these cases? 64. 64? Okay, 64. But it's still 19 more years that we're thinking this young man is going to live past what is the normal age of a juvenile that goes into prison. Your Honor, it's the state's position that this court should not make a legal determination about this defendant's life expectancy, and for the same reasoning that another panel of this division in People v. Evans declined to make that engagement saying legal determination about life expectancy. The sentence of 83, or to serve a sentence until 83 years, absolutely it's a lengthy sentence, but there's no United States Supreme Court case or Illinois Supreme Court case that says it's unconstitutional for a juvenile to serve his most meaningful or productive years in prison after committing a horrific, truly horrific crime, which is what happened in this matter. The defendant shot and killed a 16-year-old and shot another individual. Are you all aware of the facts? I sat at 26 in California for 18 years and had juveniles. This is just an enormous sentence with no discretion whatsoever for the judge. Well, it is a lengthy sentence, Your Honor, and the people acknowledge that. It is a lengthy sentence, but it still comports with the insight given to us and the guidelines given to us by the Illinois Supreme Court in Reyes. And in Reyes, they equivalent a de facto sentence to a sentence that cannot be survived within one's lifetime. And it's the State's position that 83 is not an impractical age to reach, and it can be survivable within one's lifetime. So if your argument is that we're not supposed to be looking at these studies and statistics with regards to life expectancy in prison, then what parameters should we look at in determining whether or not this is a de facto life sentence? Your Honor, at this point in time, the insight that we have is from Reyes. And perhaps buffer is going to give us more of a bright-line rule as to what length of a sentence qualifies as a natural life sentence. But at this time, the insight that we have from Reyes is whether or not this sentence can be served within one's lifetime, which this can, 83 is not an impractical age to reach, and whether or not this indisputably amounts to natural life. It's the State's position this does not indisputably amount to natural life because, as I indicated, 83 is not an impractical age to reach. Your Honors, for these reasons and the reasons stated in our brief, we'd ask you to affirm the defendant's conviction and sentence in this matter. Thank you. Two reports, Your Honors. First, the State mentioned the case of Evans. And, as it points out, Evans declined to evaluate a defendant's life expectancy. Now, the other thing is Evans did, though, is look to the rate of authority and said that this case was more like cases, its consideration was more like cases with released ages in the 40s, 50s, maybe 60s, in which relief was denied. Here, the rate of authority is 75-80 on all the cases that we've heard. The other point I make is that Rays didn't say, didn't say it was defined by Riley-Royd, said that its sentence was unquestionably natural life, which would seem to leave room for closer questions down the line. So, unless there's any other questions. Counsel argued buffer, but isn't this case somewhat similar to the facts in buffer? It's similar with one exception. The sentence is much, much longer. Yes. So, unless there's any other questions, I would ask this Court to reverse the sentence. And we're adjourned. Thank you. Thank you. We want to thank counsels for a well-argued matter. We'll take it under advisement. And the Court's going to take a short recess.